IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MARTIN O'BOYLE, et al., | : |
| Plaintiffs, | : Civ. Action No. 12-cv-06153-JHR-JS |
| v. | : |
| DAVID L. BRAVERMAN, Esq., et al. | : |
| Defendants | : |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

David L. Braverman, Esquire and Braverman Kaskey PC, by their undersigned attorneys, hereby: (i) answer plaintiffs' Amended Verified Complaint for Declaratory Relief; (ii) assert affirmative defenses thereto; and (iii) assert counterclaims against plaintiffs Martin O'Boyle, New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171 as follows:

## ANSWER TO COMPLAINT

### Parties

1-4.   Defendants lack sufficient knowledge or information to admit these allegations, and so deny them.

5.   Admitted.

6.   Admitted that Mr. Braverman is a shareholder in Braverman Kaskey P.C. ("BK").

### Background

1.   Denied. Mr. Braverman and his then firm, Fellheimer, Braverman & Kaskey, P.C.,

1

were engaged by Mr. O'Boyle, individually and as the general partner of Midland, to represent his and Midland's (and the constituent partners therein) interests in the Tennessee Action.

2. Admitted.

3. Denied. The engagement letter was executed by Mr. O'Boyle in his individual capacity and as the general partner of Midland.

4. Admitted, upon information and belief.

5. Denied.

6. Admitted in part, denied in part. It is admitted only that the Tennessee Action lasted for several years. The remainder of this paragraph is denied.

7. Admitted that by 2007 Mr. Braverman was a shareholder in Braverman Kaskey P.C.

8-9. Denied.

10. Denied. There was no tolling agreement.

11. Admitted in part, denied in part. It is admitted only that Mrs. O'Boyle and Mr. O'Boyle, individually and as general partner in Midland, Commerce Partnership No. 1147 and commerce Partnership No. 1171, filed the referenced action against Mr. Braverman, BK, and other defendants, alleging legal malpractice. It is denied that Mr. Braverman and his firm handled the Tennessee Action poorly or committed malpractice.

12-13. Admitted.

14. Admitted in part, denied in part. It is admitted only that Mr. Braverman moved to dismiss the case, or, in the alternative, for summary judgment on a number of grounds, including that the statute of limitations had run, and that they filed no answer or counterclaims in the case. The remainder of this paragraph is denied.

15. Admitted that the Honorable Joseph H. Rodriguez granted the motion to dismiss on or about the date referenced. The Court's Opinion is a document of independent legal significance and "speaks for itself."

16. The Transcript is a document of independent legal significance and "speaks for itself."

17. Braverman and BK rendered their last services related to the Tennessee Action in April 2006. At that time, Mr. O'Boyle and Midland owed more than $56,000 in fees and costs, which they failed to pay. Mr. Braverman was aware of the amount due and owing, and that it was never paid. Accordingly, Mr. Braverman and BK timely commenced an action to recover the fees and costs they were owed in the Pennsylvania Court of Common Pleas, Philadelphia County, November Term 2009, No. 1581 (the "Philadelphia Action").

18. Denied.

19. Admitted in part, denied in part. It is admitted only that Mr. Braverman and BK filed the Philadelphia Action. As is permitted under the Pennsylvania Rules of Civil Procedure, the action was commenced by writ of summons naming Mr. O'Boyle, Midland, Mrs. O'Boyle, Commerce Partnership No. 1147 and Commerce Partnership No. 1171 as parties thereto. However, when Mr. Braverman and BK filed their complaint (and later their amended complaint) in the Philadelphia Action, Mrs. O'Boyle was removed from the caption as a party, and no claims were ever asserted against her. It is denied that Mr. Braverman agreed to waive any fees or costs.

20. Admitted that a bench trial was held on September 5, 2012. The parties are required to file findings of fact and conclusions of law on or before October 23, 2012.

21-22. These allegations constitute conclusions of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

23. Admitted in part, denied in part. It is admitted only that neither Mr. Braverman nor Bk provided pre-suit notice to Catherine O'Boyle. It is denied that they were required to do so, since she was not a party thereto.

24. These allegations constitute a conclusion of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

25. Admitted only that plaintiffs filed an amended complaint on or about May 23, 2012, which was served upon Mr. Braverman and BK on September 5, 2012 at the trial of the Philadelphia Action. This was the first process in this case to be served upon Mr. Braverman and BK.

26. The Complaint and Amended Complaints are documents of independent legal significance, and all characterizations thereof are denied.

27-30. These allegations constitute conclusions of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

## FIRST COUNT

1. Defendants incorporate the foregoing paragraphs by reference, as though fully set forth herein.

2-4. Admitted.

5-7. These allegations constitute a conclusion of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

8-9. Admitted.

4

10. These allegations constitute conclusions of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

11-14. These allegations constitute conclusions of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

WHEREFORE, defendants demand judgment in their favor, and against plaintiffs, together with attorneys' fees, costs of suit and whatever further relief they are entitled at law or in equity.

## SECOND COUNT

1. Defendants incorporate the foregoing paragraphs by reference, as though fully set forth herein.

2-8. These allegations constitute a conclusion of law, to which no further response is necessary. To the extent that any response is necessary, they are specifically denied.

WHEREFORE, defendants demand judgment in their favor, and against plaintiffs, together with attorneys' fees, costs of suit and whatever further relief they are entitled at law or in equity.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiffs fail to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiffs claims are barred by applicable statutes of limitation and/or the equitable doctrine of laches.

### THIRD DEFENSE

Plaintiffs claims are barred, in whole or in part, by the doctrines of collateral estoppel and/or res judicata.

## FOURTH DEFENSE

Plaintiffs claims are barred by the equitable doctrines of waiver and estoppel.

## FIFTH DEFENSE

Plaintiffs' claims are barred by the Anti-Injunction Act, 28 U.S.C. Section 2283.

## SIXTH DEFENSE

Mr. Braverman never agreed in 2006 (or at any time) to waive and/or toll the statute of limitations on plaintiffs' malpractice claim.

## SEVENTH DEFENSE

Mr. Braverman and BK were not required by the Entire Controversy Doctrine to assert their claims for payment in the Initial New Jersey Action as a counterclaim, rather than moving to dismiss plaintiffs' complaint therein.

## EIGHTH DEFENSE

Mr. Braverman and BK did not asset any claims against Mrs. O'Boyle in the Philadelphia Action.

## NINTH DEFENSE

Mr. Braverman and BK were not required to provide pre-suit notice to Catherine O'Boyle prior to filing the Philadelphia Action by Rule 1:20A *et seq.* of the New Jersey Rules of Court.

## COUNTERCLAIMS

1. Martin O'Boyle and his mother, Catherine O'Boyle, are (or were) general partners in a Tennessee partnership called New Midland Plaza Associates ("New Midland"). They are (or were) also general partners in two Florida partnerships called Commerce Partnership No. 1147 and Commerce Partnership No. 1171, each of which has or had ownership interests in New Midland.

2. In October 1998, Mr. O'Boyle, individually and as general partner of New Midland, retained David L. Braverman ("Mr. Braverman") and his then law firm, Fellheimer Braverman & Kaskey to represent plaintiffs in a dispute between them and First Union National Bank in Tennessee state court (the "Tennessee Action").

3. Mr. Braverman and his law firms (through and including his current firm, Braverman Kaskey, PC, hereinafter "BK") diligently represented plaintiffs in the Tennessee Action from 1999 through early 2006. Mr. O'Boyle, however, treated the Tennessee Action as a game. He frequently and routinely refused to follow Mr. Braverman's advice, and persisted in a pattern and practice of inappropriate conduct during the litigation, resulting in the Tennessee trial court explicitly and specifically sanctioning Mr. O'Boyle alone - and not any of the lawyers from the six law firms that were representing Mr. O'Boyle and New Midland - for Mr. O'Boyle's personal misconduct.

4. At Mr. O'Boyle's request, Mr. Braverman and BK ceased representing the plaintiffs early in 2006. Despite Mr. Bravermans' diligent efforts on their behalf, plaintiffs refused - and continue to refuse - to pay substantial legal fees that they owe to Mr. Braverman and BK.

5. In December 2007, Mr. O'Boyle and his mother commenced an action against Mr. Braverman and BK for legal malpractice in the Philadelphia Court of Common Pleas by obtaining a writ of summons pursuant to the Pennsylvania Rules of Civil Procedure. Mr. Braverman and BK

promptly filed a praecipe for rule to file complaint under Pa.R.C.P. No. 1037, pursuant to which Mr. O'Boyle and Mrs. O'Boyle were required to file and serve their complaint within twenty days or suffer the entry of a judgment of non pros. After waiting more than the allotted twenty days, Mr. O'Boyle and Mrs. O'Boyle filed a praecipe to discontinue the action.

6. Thereafter, Mr. O'Boyle and his mother, on behalf of themselves and as general partners of New Midland and the Commerce Partnerships, filed an action against Mr. Braverman and his firms in the Superior Court of Atlantic County, New Jersey, asserting claims for legal malpractice grounded in both tort and contract theories (the "Initial New Jersey Action").

7. After removing the Initial New Jersey Action to this Court, Mr. Braverman moved to dismiss the complaint on the ground that the plaintiffs claims were time-barred. After full briefing and oral argument, this Court agreed, holding as a matter of law that all of the claims were time-barred under Tennessee's one-year statute of limitations for legal malpractice claims, and dismissed plaintiffs' Complaint with prejudice.

8. Plaintiffs filed an appeal to the United States Court of Appeals for the Third Circuit, which affirmed this Court's dismissal of their Complaint with prejudice. The Third Circuit agreed that all of plaintiffs' claims were governed - and barred - by Tennessee's one-year statute of limitations for legal malpractice claims.

9. Plaintiffs then filed a Petition for a Writ of Certiorari in the Supreme Court of the United States, which was denied without comment by Order dated January 11, 2010. In litigating the Initial New Jersey Action, and all subsequent appeals, O'Boyle acted maliciously, wilfully and vexatiously.

8

10. Mr. Braverman and his law firms are not the only entities that have been the victims of Mr. O'Boyle's meritless and vexatious litigation. After the New Jersey Action was dismissed, and while Mr. O'Boyle's meritless appeal was pending before the Third Circuit, Mr. O'Boyle filed an identical malpractice suit (the "New Jersey Shulman Action") against the law firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A. and two attorneys associated with that firm (collectively, "Shulman") in the Superior Court of Atlantic County, New Jersey. Shulman is one the six law firms retained by Mr. O'Boyle in connection with the Tennessee Action. Shulman promptly removed the case to the United States District Court for the District of New Jersey, where it was assigned to Judge Rodriguez - the same District Judge who had already dismissed Mr. O'Boyle's claims against Mr. Braverman and BK with prejudice. Mr. O'Boyle immediately dismissed the New Jersey Shulman Action without prejudice.

11. Shopping for what he perceived would be a less hostile forum for his meritless claims, Mr. O'Boyle then filed a new complaint asserting malpractice claims against Shulman in the United States District Court for the Eastern District of Tennessee in April 2009 (the "Shulman Complaint"). Like the New Jersey Action against plaintiffs, that action in the Eastern District of Tennessee was promptly dismissed with prejudice as time-barred under Tennessee's one-year statute of limitations. See Martin E. O'Boyle, et al. v. Shulman, Rogers, Gandal, Pordy & Ecker, P.A., et al., 2010 U.S. Dist. Lexis 31769 (E.D. Tenn. Mar. 31, 2010). The United States Court of Appeals for the Sixth Circuit, having heard Mr. O'Boyle's appeal, recently affirmed the trial court's dismissal of the Shulman Complaint with prejudice. See O'Boyle v. Shulman, Rogers, Gandal, Pordy & Ecker, P.A., 2011 U.S. App. LEXIS 16717 (6th Cir. Aug. 11, 2011).

12. Because Mr. O'Boyle refused BK's repeated demands for payment of the substantial fees owed by the plaintiffs, BK filed a writ of summons against plaintiffs in the Pennsylvania Court of Common Pleas, Philadelphia County, in November 2009, followed by a complaint against plaintiffs *other than Mrs. O'Boyle* seeking to recover unpaid attorneys fees in the amount of $56,567.37, plus statutory interest (the "Philadelphia Action").

13. Plaintiffs - defendants in the Philadelphia Action -- filed an answer denying any obligation to pay the fees claimed by BK. In addition, they asserted a number of counterclaims, seeking judgment in the amount of the fees they had paid Mr. Braverman and his firms in the Tennessee Action, *each of which arose entirely from allegations that Mr. Braverman and his firms had committed legal malpractice in their handling of the Tennessee Action.*

14. These counterclaims were identical to the claims which were dismissed with prejudice by this Court, which dismissal was affirmed by the Third Circuit Court of Appeals, and cert denied by the Supreme Court of the United States.

15. They are also identical to the claims asserted against Shulman by Mr. O'Boyle, first in his complaint against Shulman filed in New Jersey and ultimately in the Shulman Complaint filed by Mr. O'Boyle in Tennessee. The only difference is that Mr. O'Boyle accused Shulman (in the latter two complaints) of the very same conduct of which he accused Mr. Braverman and BK in the Initial New Jersey Action and the Counterclaims.

16. That is, Mr. O'Boyle charged Shulman, in his New Jersey Complaint against Shulman *and* in his Complaint against Shulman in the District Court in Tennessee, with the very same conduct of which he accused Mr. Braverman in the Initial New Jersey Action against Mr. Braverman and BK and the Counterclaims.

17. In sum, Mr. O'Boyle brought the Initial New Jersey Action against Mr. Braverman and BK, charging them with various acts and omissions which, Mr. O'Boyle contended, constituted professional malpractice. After that action was dismissed with prejudice, he brought two separate actions against Shulman, charging Shulman with the very same acts and omissions. The dismissal of his claims against Mr. Braverman and BK has been affirmed by the Third Circuit, and the Supreme Court denied Mr. O'Boyle's petition for certiorari.

18. Likewise, Mr. O'Boyle's claims against Shulman - charging Shulman with the same conduct of which Mr. Braverman is accused - were dismissed with prejudice by the District Court in Tennessee, in an Order which has now been affirmed by the Sixth Circuit.

19. Thus, at least four Federal Courts (the U.S. District Courts for the District of New Jersey and the Eastern District of Tennessee, and the Courts of Appeals for the Third and Sixth Circuits) have now held that any malpractice claims arising out of the Tennessee Action are governed (and barred) by Tennessee's one-year statute of limitations.

20. Nevertheless, Mr. O'Boyle, again filed his identical meritless and time-barred malpractice claims against BK in the form of counterclaims in the Philadelphia Action. Given that those very claims were repeatedly dismissed, Mr. O'Boyle could not have had any reasonable belief that they had merit or would be successful, nor could have had any probable cause for asserting the counterclaims.

21. Not surprisingly, the trial court in the Philadelphia Action granted BK's motion for summary judgment and dismissed all of plaintiffs' claims for affirmative relief.

22. On September 5, 2012, a bench trial was conducted in the Philadelphia Action.

23. Shortly before trial, Mr. O'Boyle fired Mr. Tobolsky, his then attorney, predictably claiming that he had committed malpractice. At the same time, his current attorney, David Alan Klein entered his appearance on plaintiffs behalf and tried the case.

24. The parties in the Philadelphia Action are required to file findings of fact and conclusions of law on or before October 23, 2012.

25. On July 13, 2012, plaintiffs commenced this action by filing a Complaint against Mr. Braverman and BK in the Superior Court of Camden County, New Jersey. The Complaint was never served upon Mr. Braverman or BK.

26. On July 16, 2012, the trial court in the State Court Action denied plaintiffs' *ex parte* application for temporary restraints. Mr. Braverman and BK never received notice from plaintiffs that they would be seeking temporary restraints, and were never served with a copy of the July 16th Order.

27. On August 23, 2012, plaintiffs filed an Amended Verified Complaint for Declaratory Relief (the "Amended Complaint") in the Superior Court.

28. On September 5, 2012, the Amended Complaint was served upon Mr. Braverman and BK at trial in the Philadelphia Action. On September 27, 2012, Mr. Braverman and BK timely removed this action.

29. In the Amended Complaint, plaintiffs seek to preclude Mr. Braverman and BK from obtaining judgment in the Pennsylvania Action by requesting, *inter alia*, the following declaratory and/or injunctive relief:

- Entry of an Order that the Pennsylvania Action "be dismissed with prejudice,"
- An injunction restraining Mr. Braverman and BK from "continuing to prosecute" the

>Pennsylvania Action; and

- A declaration that any and all actions by Mr. Braverman and BK "in furtherance of" the Pennsylvania Action are "null and void."

30. Plaintiffs never asserted in the Initial New Jersey Action or the Philadelphia Action – or anywhere, prior to this case -- as they do here, that Mr. Braverman agreed to waive and/or toll the statute of limitations on plaintiffs' malpractice claim. The allegation that he did so is false.

31. Plaintiffs never asserted in the Philadelphia Action – or anywhere, prior to this case - that Mr. Braverman and BK were required, as a matter of law, to assert their claims for payment in the Initial New Jersey Action as a counterclaim, rather than moving to dismiss plaintiffs' complaint therein, by the Entire Controversy Doctrine.

32. As a matter of law, they were not required to do so, as the Initial New Jersey Action was over before they would have been required to file such a counterclaim.

33. Plaintiffs never asserted in the Philadelphia Action – or anywhere, prior to this case -- that Mr. Braverman and BK were required to provide pre-suit notice to Catherine O'Boyle prior to filing the Philadelphia Action by Rule 1:20A *et seq.* of the New Jersey Rules of Court.

34. As a matter of law they were not – even if they sued Mrs. O'Boyle in the Philadelphia Action, which they did not.

35. Plaintiffs' claims herein are specious, unreasonable, malicious and vexatious, the product of a "too clever by half" attorney and, to all outward appearances, a pathologically litigious client, Mr. O'Boyle.

36. Plaintiffs' counterclaims in the Philadelphia Action, and their claims herein, are outrageous and were intentionally and/or recklessly asserted without regard for the rights of Mr.

Braverman and BK.

## COUNTERCLAIM I – ABUSE OF PROCESS

37. Mr. Braverman and BK repeat and reallege each and every allegation contained in paragraphs 1 through 38 above, as if set forth at length herein.

38. On July 18, 2011, in response to plaintiffs' Pennsylvania Complaint for attorneys' fees arising out of their diligent representation of Mr. O'Boyle in the Tennessee Action, Mr. O'Boyle and plaintiffs herein (other than Mrs. O'Boyle) filed their counterclaims in the Philadelphia Action for unjust enrichment, malpractice/breach of fiduciary duty, setoff, and breach of contract, all based upon allegations of legal malpractice committed in the Tennessee Action.

39. Plaintiffs did not file such counterclaims to achieve a legitimate object of the legal process; to the contrary, they knew that none of the counterclaims they asserted were cognizable as a matter of law and have used the legal process as a tactical weapon to obtain a purpose for which such process was not designed.

40. Before filing their counterclaims in the Philadelphia Action, plaintiffs knew:

- that Mr. O'Boyle's prior malpractice action against plaintiffs had been dismissed, on the merits and with prejudice;
- that such dismissal had been affirmed by the Third Circuit;
- that the Supreme Court of the United States had refused to hear an appeal from such dismissal;
- that their newly-asserted counterclaims were founded upon the very same facts and circumstances which gave rise to Mr. O'Boyle's prior action, which had been dismissed with prejudice;

- that their newly-asserted counterclaims were barred by principles of res judicata and collateral estoppel;

- that their malpractice action against Shulman - in which they accused Shulman of the same conduct they alleged against plaintiffs - was dismissed with prejudice as time-barred by the District Court in Tennessee (in an Order which has now been affirmed by the Sixth Circuit);

- that their newly-asserted counterclaims were barred by Tennessee's one-year statute of limitations applicable to claims for legal malpractice;

- that their newly-asserted counterclaims were barred by Pennsylvania's two-year statute of limitations applicable to claims for breach of fiduciary duty;

- that their newly-asserted counterclaims were barred by Pennsylvania's four-year statute of limitations applicable to claims for breach of contract;

- that their newly-asserted counterclaims were barred by Pennsylvania's four-year statute of limitations applicable to claims for unjust enrichment; and

- that the doctrine of unjust enrichment was entirely inapplicable to their claims, which are founded upon a written contract (the Retainer Agreement).

41. Notwithstanding such prior knowledge, plaintiffs asserted the counterclaims to harass, annoy, and cause harm to Mr. Braverman and BK, and in an effort to coerce them to relinquish their right to recover the fees owed by plaintiffs to Mr. Braverman and BK.

42. Then, after their meritless counterclaims in the Philadelphia were dismissed, and on the eve of trial in Philadelphia Action, plaintiffs commenced this case based upon spurious legal arguments and a factual contention that, if it had any truth to it whatsoever, would have been raised

in the Initial New Jersey Action in 2007.

43. Plaintiffs did not file this action to achieve a legitimate object of the legal process; to the contrary, they knew that none of the claims they asserted were cognizable as a matter of law and have used the legal process as a tactical weapon to obtain a purpose for which such process was not designed.

44. Mr. Braverman and BK have suffered real and continuing harm as a result of plaintiffs' arbitrary, capricious, vexatious and outrageous conduct, including, but not limited to, being forced to defend against plaintiffs' meritless counterclaims and the claims asserted by plaintiffs in this case.

WHEREFORE, Mr. Braverman and BK demand judgment against plaintiffs Martin O'Boyle, New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171, jointly and severally, for:

a. compensatory damages in an amount to be determined at trial, but in any event in excess of $250,000.00;

b. punitive damages;

c. interest, attorneys' fees and costs of suit; and

d. such other and further relief as the Court deems just and equitable.

## COUNT II – WRONGFUL USE OF CIVIL PROCEEDINGS

45. Mr. Braverman and BK repeat and reallege each and every allegation contained in paragraphs 1 through 46 above, as if set forth at length herein.

46. Plaintiffs filed and prosecuted the counterclaims in the Philadelphia Action against Mr. Braverman and BK.

47. The counterclaims were dismissed on summary judgment by the trial court.

48. Plaintiffs lacked probable cause for asserting the Counterclaims in that, among other things, given the dismissal of their malpractice claims in the Initial New Jersey Action, plaintiffs could not have reasonably believed that the Counterclaims had any validity under then existing or developing law.

49. The primary purpose for which the Counterclaims were brought was not to secure the proper adjudication of the claim on which the proceedings were based, to the contrary, they knew that none of the Counterclaims were cognizable as a matter, yet prosecuted them to harass Mr. Braverman and BK and as a tactical weapon to obtain a purpose for which such process was not designed, namely, to coerce them into giving up their claims for payment for services.

50. Mr. Braverman and BK have suffered real and continuing harm as a result of plaintiffs' arbitrary, capricious, vexatious and outrageous conduct, including, but not limited to, being forced to defend against plaintiffs' meritless Counterclaims and the claims asserted by plaintiffs in this case.

WHEREFORE, Mr. Braverman and BK demand judgment against plaintiffs Martin O'Boyle, New Midland Plaza Associates, Commerce Partnership No. 1147 and Commerce Partnership No. 1171, jointly and severally, for:

a. compensatory damages in an amount to be determined at trial, but in any event in excess of $250,000.00;

b. punitive damages;

c. interest, attorneys' fees and costs of suit; and

d.   such other and further relief as the Court deems just and equitable.

Dated: October 19, 2011               **BRAVERMAN KASKEY, P.C.**

                                      BY:   _Peter J. Leyh  /s/_
                                             **Peter J. Leyh, Esq.**
                                             **One Liberty Place**
                                             **1650 Market Street, 56th Floor**
                                             **Philadelphia, Pennsylvania 19103**
                                             **Telephone: (215) 575-3800**
                                             **Facsimile: (215) 575-3801**

                                             *Attorneys for David L Braverman, Esq. and Braverman Kaskey PC*

## **CERTIFICATE OF SERVICE**

I, Peter J. Leyh, Esquire, hereby certify, on this 19th day of October, 2012, that I caused a true and correct copy of the foregoing Answer, Affirmative Defenses and Counterclaims to be served upon the following counsel of record by electronic mail via the Court's ECF System:

> David Alan Klein, Esquire
> Law Offices of David Alan Klein, P.C.
> Ten Grove Street
> P.O. Box 117
> Haddonfield, NJ 08033
> Email: dakcorplaw@aol.com

Dated: October 19, 2012                                              */s/ Peter J. Leyh*
                                                                              Peter J. Leyh